The Honorable Kim Hendren State Senator 1501 Highway 72 Southeast Gravette, Arkansas 72736-9438
Dear Senator Hendren:
You requested my opinion about bidding requirements for professional services rendered to political subdivisions in Arkansas. I have paraphrased your question as follows:
 Under Arkansas law, municipalities cannot invite competitive bids on the following set of professional services: legal, financial advisory, architectural, engineering, construction management, and land surveying. Arkansas law does, however, recognize "other professional services" outside that list. For the latter services, Arkansas law permits municipalities to forgo "competitive bidding . . . with a two-thirds [] vote of the [municipality's] governing body." Are there any restrictions on the types of services the municipality may designate as a "professional service"?
RESPONSE
In my opinion, the answer to your question is "yes," but the statute is not entirely clear on what those restrictions are. On the one hand, the statutory scheme makes clear that the municipality does not have unbridled discretion when it determines that a given service counts as an "other professional service." The service must be a legitimate "professional service." So municipalities' decisions are limited by the meaning of "professional service." On the other hand, the statute never exhaustively defines what counts as a "professional service." Because I cannot define terms that the General Assembly has left undefined, I cannot further explain *Page 2 
what a professional service is and, consequently, I cannot definitively determine whether a given activity qualifies as a professional service.
DISCUSSION
In general, political subdivisions are required to invite competitive bids on certain contracts: "It is the policy of the State of Arkansas and its political subdivisions that political subdivisions follow the [competitive bidding] procedures stated in this section [i.e. A.C.A. §§ 19-11-801 to-807]. . . ."[1]
The relevant statutes establish two exceptions to this general requirement to invite competitive bids. Both exceptions deal with "professional services." The first exception, found at subsection 19-11-801(b), actually requires political subdivisions — which includes cities — to refrain from inviting competitive bids for a certain set of professional services: legal, financial advisory, architectural, engineering, construction management, and land surveying.[2] The second exception, found at subsection 19-11-801(c), permits
political subdivisions to forgo the competitive bidding process for other professional services that are not included in the required list contained in subsection 19-11-801(b). Because your question only asks about the permitted types of professional services, I will limit my analysis to them.
The statutory scheme makes it clear that cities can only forgo competitive bidding for legitimate professional services. This is evident from subsection 19-11-801(c)'s wording:
 For purposes of this subchapter, a political subdivision . . . may elect to not use competitive bidding for other professional services not listed [in 19-11-801(b)] with a two-thirds (2/3) vote of the political subdivision's governing body."[3]
The fact that subsection 19-11-801(c) explicitly links the professional services it contemplates with the itemized professional services in 19-11-801(b) indicates that the General Assembly had in mind a two-tiered structure of professional services. *Page 3 
The itemized professional services in 19-11-801(b) are simply a smaller sub-set of professional services generally. Seen in that light, subsection 19-11-801(c) encompasses all professional services, and 19-11-801(b) acts as a sub-set of 19-11-801(c) by picking out six professional services for special treatment. This structure makes it clear that the "other professional services" contemplated by 19-11-801(c) must be legitimate professional services.[4]
But the problem — which your question draws out — is that the statute does not exhaustively define "professional services." Consequently, cities have little statutory guidance on what "professional services" means. This office cannot define statutory terms that neither the General Assembly nor the courts have defined.
Nevertheless, cities do have some guidance on what counts as a professional service. There are two general ways in which one may define a term: by intension[5] and by extension. The former defines the term by giving its attributes or meaning. The latter defines a term by giving examples of it. Webster's Dictionary explains both terms: intension "(of a term) [is] the set of attributes belonging to all and only those things to which the given term is correctly applied"; extension is "the class of things to which a term is applicable."[6]
The statute partially defines "professional services" by giving a sub-set of its extension, but the statute does not provide an intensional definition. Accordingly, the itemized list of professional services contained at 19-11-801(b) gives cities some clue about what counts as a "professional service" because it partially defines the term extensionally. The trouble is that, without either an exhaustive extensional list or an intensional definition, cities cannot definitively know what the General Assembly takes to be "professional services." That leaves cities with the task of asking whether a particular service is sufficiently like the itemized list of professional services to count as a "professional service." Because that task is so highly factual, I am neither equipped nor authorized to engage in it.
In summary, when cities vote to forgo competitive bidding on a service they take to be an "other professional service" under subsection 19-11-801(c), the service *Page 4 
must be a legitimate professional service. But because the General Assembly has not exhaustively defined "professional services" — which requires giving an exhaustive extensional definition or an intensional definition — cities must compare the proposed service to the examples of professional services listed in subsection 19-11-801(b) to see whether the proposed service is sufficiently like those listed. That comparison is highly factual, and the statute leaves that comparison to the cities.
Assistant Attorney General Ryan Owsley prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN MCDANIEL Attorney General
[1] A.C.A. § 19-11-801(b) (Repl. 2007).
[2] Id.
[3] A.C.A. § 19-11-801(c) (Repl. 2007).
[4] Op. Att'y Gen. 2007-256.
[5] This is not to be confused with the term "intention," which describes a person's state of mind.
[6] Random House Webster's Unabridged Dictionary, 684, 991 (2d ed., 1998).